**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Christopher Love, | ) | No. CV 06-2154-PHX-EHC |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| The Hartford Casualty Insurance Company, a foreign corporation; John Does I-V; Jane Does I-V; Black Partnerships I-V; White Corporations I-V, | ) | |
| Defendants. | ) | |

Plaintiff originally sued Defendant Hartford Casualty Insurance Company ("Defendant") in the Superior Court of Maricopa County, Arizona, asserting state law claims for breach of contract (Count I) and bad faith (Count II).  The case was removed to this Court based on diversity jurisdiction, 28 U.S.C. § 1332.  (Dkt. 1).

On December 8, 2006, Defendant filed a Motion for Summary Judgment on both claims asserted in the Complaint. (Dkt. 23).  Plaintiff filed a Response to Defendant's Summary Judgment Motion (Dkt. 25) and a Cross-Motion for Partial Summary Judgment on the breach of contract claim.  (Dkt. 25).

Defendant has filed a Motion to Withdraw its argument in its Summary Judgment Motion that, even if there was a breach of contract, Plaintiff cannot prove bad faith.  (Dkt. 24).  Defendant also has filed a Notice of Errata as to its Summary Judgment Motion

1 withdrawing its argument on Plaintiff's bad faith claim. (Dkt. 32). Defendant's Motion to

2 Withdraw Argument (Dkt. 24) is granted.

3       The Parties have completed their briefing on Summary Judgment (Dkt. 23, 25, 31 &

4 36) and the issues are ready for decision. The Court has determined that oral argument

5 would not materially assist in deciding the Parties' Cross-Motions for Summary Judgment.

6 Defendant's Motion for Oral Argument (Dkt. 43) is denied.

7 **Background**

8       During the evening of September 2, 2002, Jarrod Dorman ("Dorman"), Lance

9 Kwiatkoski ("Kwiatkoski"),[1] and Plaintiff were social guests at a party at an apartment

10 complex in Tempe, Arizona. During the party, Plaintiff spoke to a girl who complained

11 about her toe. While waiting for his friends so they could leave the party, Plaintiff attempted

12 to tell the girl he was sorry about her toe. Dorman, allegedly the girl's boyfriend, confronted

13 Plaintiff and shoved him. Plaintiff and Dorman then engaged in a verbal confrontation.

14 (Dkt. 23, Exhibit [Exh.] 1 - City of Tempe Incident Report (02-143917)).

15       Kwiatkoski, who was sitting in a chair in the living room, heard yelling and saw

16 Dorman face-to-face with Plaintiff near a doorway. Kwiatkoski "immediately jumped up"

17 and walked to where Plaintiff and Dorman were standing and stood "kind of to the side" of

18 Dorman. After about 30 seconds to a minute, Kwiatkoski punched Plaintiff in the right side

19 of his face. (Dkt. 23, Exh. 1; Dkt. 27 - Kwiatkoski Deposition, pp. 15-18). Plaintiff went out

20 onto the balcony to spit out blood from inside his mouth. Plaintiff was taken to the hospital

21 and treated for a broken jaw. (Dkt. 23, Exh. 1).

22       On September 25, 2002, Detective J. McGowan questioned Kwiatkoski about the

23 incident at the party. Kwiatkoski told the officer that he was sitting in a chair in the living

24 room when he heard some yelling and noticed his friend Dorman face-to-face with Plaintiff.

25 Kwiatkoski jumped out of the chair and went to where Dorman was standing in the bedroom

26 doorway arguing with Plaintiff. Kwiatkoski stood next to Dorman as Dorman was telling

27 _____

28     [1]The record shows this name also spelled as "Kwiatkowski."

1   Plaintiff to "get the hell out of here."  Kwiatkoski stated, "he said F.U. or something and I

2   just snapped and I punched him."  Kwiatkoski also stated, "I just hit him, I don't know, I

3   should have thought but I didn't."  (Dkt. 23, Exh. 2, page 2). Kwiatkoski was charged with

4   one count of aggravated assault under A.R.S. §§ 13-1203(A), 13-1204(A).  (Dkt. 23, Exh.

5   4 & Exh. 5).

6          On March 29, 2005, Kwiatkoski entered into a plea agreement pursuant to which he

7   was sentenced to probation after pleading guilty to one count of  "solicitation to commit

8   aggravated assault."  (Dkt. 23, Exh. 5).  Under A.R.S. § 13-1002, a person commits

9   solicitation if,

10              with the intent to promote or facilitate the commission of a
                felony or misdemeanor, such person commands, encourages,
11              requests or solicits another person to engage in specific conduct
                which would constitute the felony or misdemeanor or which
12              would establish the other's complicity in its commission.

13   *See* A.R.S. § 13-1002(A).

14         On August 13, 2003, Plaintiff filed a civil complaint in the Maricopa County Superior

15   Court against Evan Graham, the lessee of the apartment, Dorman and Kwiatkoski. (Dkt. 23,

16   Exh. 6).  On April 5, 2004, the court awarded judgment by default for compensatory damages

17   in the amount of $85,000 against Graham.  Plaintiff sought judgment against Kwiatkoski as

18   the perpetrator of the assault for both compensatory and punitive damages.  On September

19   30, 2004, the court issued a minute entry in which it awarded judgment in Plaintiff's favor

20   against Kwiatkoski in the amount of $85,000 for compensatory damages and $10,000 for

21   punitive damages. (Dkt. 23, Exh. 7).  The court stated in relevant part as follows in the

22   minute entry:

23              Defendant Kwiatoski attacked Plaintiff apparently out of
                jealousy and while under the influence of alcohol or other
24              substances being served [at] the gathering both men attended.
                The attack was unprovoked, unjustifiable and with the intent to
25              injure the Plaintiff or at least with reckless disregard for the
                substantial risk of harm that might result ... the behavior
26              exhibited by Defendant [was] clearly motivated by an evil mind
                and punitive damages should follow not only to punish the
27              wrongdoer but also to deter others who would engage in this
                type of activity without regard to its consequences.

28

- 3 -

1   (Dkt. 23, Exh. 7 - Minute Entry).

2          On October 28, 2004, Plaintiff's counsel deposed Kwiatkoski. (Dkt. 27- Kwiatkoski

3   Deposition).   Kwiatkoski testified that he was sitting in the living room, heard the

4   confrontation and "jumped up and walked over there."  (id., pp. 15-17). Kwiatkoski stood

5   by about 30 seconds to a minute and then punched Plaintiff.  (id., pp. 17-18).  When asked

6   what made him decide to punch Plaintiff, Kwiatkoski responded, "My bad decision-making

7   when I get angry.  I don't know.  I just - - all I can hear is ...  I don't know.  I get mad and my

8   heart just starts beating and that's all I can hear.  I don't know."  (id., page 18).  He answered

9   "no" when asked if "Chris" [Plaintiff] said anything to upset him. (id., page 18).  Kwiatkoski

10  further testified, "I wouldn't say I felt threatened ... I just made a stupid decision."  (id., page

11  19).  Kwiatkoski testified he "was probably a little worried for what was going to happen

12  between him and Jarrod [Dorman]. ... me and my friends were just - - we're just close.

13  We're real close.  So it's hard to say.  We just watch out for each other."  (id., page 19).

14         After first stating that he thought "Jarrod" [Dorman] pushed "Chris" [Plaintiff],

15  Kwiatkoski could not recall if one pushed the other.  (id., pp. 20-22).  Kwiatkoski testified

16  that he was "worried" because there were kids at the party from different high schools and

17  he "kind of wanted to stop anything that was going to happen before it happened ..." (id., pp.

18  22-23).  He also did not want anything to happen to his friend, stating "I didn't want a fight

19  to break out, so I punched him." (id., pp. 25-26).  Kwiatkoski testified that "Jarrod" has been

20  his best friend since high school.  (id., pp. 38).

21                                     **The Insurance Policy**

22         On the date of the incident, Kwiatkoski's grandmother, with whom he resided,

23  possessed a homeowner's insurance policy ("the Policy") issued by Defendant.  Under

24  "Section II – Liability Coverages, Coverage E – Personal Liability" of the Policy,  the

25  agreement states:

26                 If a claim is made or a suit brought against an
                   **insured** for damages because of **bodily injury** or
27                 **property damage** caused by an occurrence to
                   which this coverage applies, we will:

28

1. Pay up to your limit of liability for the damages for which the **insured** is legally liable...; and

2. Provide a defense at our expense by counsel of our choice. Even if the suit is groundless, false, or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the **occurrence** equals our limit of liability.

The Policy defines an "occurrence" as:

an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result during the policy period, in

**a. Bodily injury**; or

**b. Property damage**.

The Policy specifically excludes coverage for "intentional acts" under "Section II – Exclusions," which states:

1. **Coverage E – Personal Liability and Coverage F – Medical Payments to Others** do not apply to **bodily injury** or **property damage**:

**a.** Which is expected or intended by the **insured**.

(Dkt. 23-2, Defendant's Statement of Facts, ¶¶ 37-42 [Ex. 9] (emphasis in original)).

This provision was later amended by Endorsement HO-300 (Ed. 11/00) as follows:

**Section II – Exclusions**

Under **1. Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others**; item **a.** is deleted and replaced by the following:

**a.** Which is expected or intended by one or more insureds; ...

(Dkt. 23-2, Defendant's Statement of Facts, ¶ 42 [Exh. 10](emphasis in original)).

On June 28, 2004, Defendant denied coverage for the incident based on the Policy language definition of a covered "occurrence" and the "intentional acts" exclusion. (Dkt. 23-2, Defendant's Statement of Facts, ¶ 43). Kwiatkoski and Plaintiff entered into a *Damron*

1  Agreement[2] in which Kwiatkoski assigned his rights against Defendant to Plaintiff. (Dkt. 23,
2  Exh. 12).  Plaintiff subsequently filed this lawsuit.

3  **Standard of Review**

4          A court must grant summary judgment "if the pleadings, depositions, answers to
5  interrogatories, and admissions on file, together with the affidavits, if any, show that there
6  is no genuine issue as to any material fact and that the moving party is entitled to judgment
7  as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317,
8  322-23 (1986).   Under summary judgment practice, the moving party bears the initial
9  responsibility of presenting the basis for its motion and identifying those portions of the
10  record, together with affidavits, that it believes demonstrate the absence of a genuine issue
11  of material fact.  Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th
12  Cir. 2001) (en banc).  In assessing whether a party has met its burden, the court views the
13  evidence in the light most favorable to the nonmoving party.  Allen v. City of Los Angeles,
14  66 F.3d 1052, 1056 (9th Cir. 1995).  Generally, all reasonable inferences are drawn in the
15  favor of the nonmovant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).
16  Where cross-motions for summary judgment are at issue, each motion is evaluated
17  separately, "giving the nonmoving party in each instance the benefit of all reasonable
18  inferences." American Civil Liberties Union of Nevada v. City of Las Vegas, 466 F.3d 784,
19  790-91 (9th Cir. 2006).

20          If the moving party meets its burden with a properly supported motion, the burden
21  then shifts to the opposing party to present specific facts that show there is a genuine issue
22  for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995);
23  see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n. 4 (1986).  If the moving party

---

25          [2]A *Damron* Agreement generally refers to an agreement in which the insured
26  defendant admits to liability and assigns to a plaintiff his or her rights against the liability
27  insurer, including a cause of action for bad faith, in exchange for a promise by the plaintiff
   not to execute the judgment against the insured.  See Associated Aviation Underwriters v.
28  Wood, 98 P.3d 572, 577 n. 1 (Ariz. App. Div. 2 2004).

1    presents evidence that, taken by itself, would establish the right to a directed verdict at trial,

2    the motion for summary judgment must be granted in the absence of any significant probative

3    evidence tending to support the opposing party's theory of the case. <u>First Nat'l Bank of Ariz.</u>

4    <u>v. Cities Serv. Co.</u>, 391 U.S. 253, 289-290 (1968); <u>THI-Hawaii, Inc. v. First Commerce Fin.</u>

5    <u>Corp.</u>, 627 F.2d 991, 993-94 (9th Cir. 1980). Conclusory allegations, unsupported by factual

6    material, are insufficient to defeat a motion for summary judgment. <u>Taylor v. List</u>, 880 F.2d

7    1040, 1045 (9th Cir. 1989).  The opposing party must, by affidavit or as otherwise provided

8    by Rule 56, designate specific facts that show there is a genuine issue for trial. <u>Anderson</u>, 477

9    U.S. at 249; <u>Devereaux</u>, 263 F.3d at 1076.

10          In a diversity case, the court must apply the substantive law of the forum state.

11   <u>Takahashi v. Loomis Armored Car Service</u>, 625 F.2d 314, 316 (9th Cir. 1980).  In the absence

12   of controlling authority, a federal court sitting in diversity is justified in using its own best

13   judgment in predicting how the state's highest court would decide the case.  <u>Id</u>.

14                                        **Discussion**

15          Defendant argues that there is no question that Kwiatkoski's "sucker-punch" of

16   Plaintiff was an exercise of his own volition. Moreover, even if Kwiatkoski's admissions are

17   disregarded, Kwiatkoski's intent must be presumed since punching Plaintiff, who was in no

18   position to defend himself, was virtually certain to cause injury.  Defendant argues that

19   Kwiatkoski's insurance contract with Defendant specifically excluded coverage for

20   intentional acts and the policy's exclusion bars coverage for the assault. Defendant also

21   argues that Kwiatkoski cannot now deny that he intentionally punched Plaintiff based on his

22   guilty plea.

23          Plaintiff in his Response and Cross-Motion for Summary Judgment argues, under

24   Arizona law, that if the insured can show facts that might establish that he acted with

25   privilege, he is permitted to explain his subjective intent and it is for the fact finder to

26   determine whether he had an underlying purpose to injure.  Plaintiff argues that there are

27   facts which show that Kwiatkoski was acting with privilege, and there is no dispute of

28

1   material fact that Kwiatkoski's subjective intent was to prevent a fight and injury to his friend

2   Dorman rather than to injure Plaintiff.  Plaintiff further argues that neither Kwiakoski's guilty

3   plea nor the state civil court's findings in the minute entry apply to bar the claim. Plaintiff

4   argues that as a matter of law, Defendant breached its contract with Kwiatkosi when it denied

5   coverage and indemnity on the underlying claim.

6        In Arizona, insurers may deny coverage for those intentional acts which are virtually

7   certain to cause injury.  Determining an insured's subjective intent to injure is ordinarily a

8   question of fact.  Farmers Ins. Co. of Arizona v. Vagnozzi, 675 P.2d 703, 709 (Ariz.

9   1983)(insured injured Vagnozzi in a scuffle during a three-on-three recreational league

10  basketball game). However, Arizona law presumes that an insured intends harm if the nature

11  of the act was such that harm was substantially certain to occur:

12           [T]here is a presumption of intent to injure if the act is
             "'virtually certain to cause injury,' ... The so-called 'Steinmetz-
13           Clark' 'presumption applies' "if the nature and circumstances of
             the insured's intentional act were such that harm was
14           substantially certain to result.

15  K.B. v. State Farm Fire and Casualty Co., 941 P.2d 1288, 1290 (Ariz. App.1997)(referring

16  to Steinmetz v. National Am. Ins. Co., 589 P.2d 911, 914 (Ariz. App. 1979), and Clark v.

17  Allstate Ins. Co., 529 P.2d 1195, 1196 (Ariz. App. 1975)). See, Ohio Casualty Insurance Co.

18  v. Henderson, 939 P.2d 1337, 1343 (Ariz. 1997)(circumstances surrounding armed robbery

19  made it certain that someone in or around the scene would suffer bodily injury) . Where the

20  act is virtually certain to cause harm, the requisite intent to harm will be inferred as a matter

21  of law.  State Farm Fire and Casualty Co. v. Doe, 797 P.2d 718, 720 (Ariz. App. 1990);

22  Republic Ins. Co. v. Feidler, 875 P.2d 187, 190-91 (Ariz. App. Div. 1 1993). The Steinmetz-

23  Clark presumption does not apply when the insured lacks the mental capacity to act

24  rationally.  K.B., 941 P.2d at 1290.

25       Plaintiff relies on Transamerica Insurance Group v. Meere, 694 P.2d 181 (Ariz. 1984),

26  in which Meere, a former police officer, was confronted by one Pruitt, a prison guard.  Words

27  were exchanged and a fight ensued during which Meere knocked Pruitt to the ground and he

28  sustained serious injury.  Id., at 187.  The issue in Meere was whether a person acting in self-

1    defense or with other justification "intends" to injure even though he acts in a manner quite

2    likely or even certain to cause some injury.  The Arizona Supreme Court observed that "if

3    the insured can show facts which might establish that he acted with privilege..., he will be

4    permitted to explain his subjective intent, and it will be for the fact finder to determine

5    whether he had an underlying purpose to injure."  Id., at 189.  In this type of case, "the

6    question of intent must be resolved by a determination of the basic purpose or desire

7    underlying the insured's conduct."  Fire Ins. Exchange v. Berray, 694 P.2d 191, 193 (Ariz.

8    1984)(insured allegedly shot victim in self-defense).

9           Plaintiff cites the following summary of facts as supporting his claim that he has made

10   the necessary showing under Meere:

11             It is undisputed in this case that Dorman shoved Love and
               exchange[d] heated words with him.  The confrontation
12             appeared to Kwiatkoski likely to come to blows.  Kwiatkoski
               also believed that Dorman would likely be hurt as Love
13             [Plaintiff] was the larger person.  Thus, the facts clearly
               demonstrate that Kwiatkoski was acting in the defense of a third
14             person, Dorman.

15   (Dkt. 25 - Plaintiff's Response and Cross Motion for Summary Judgment, at page 8).

16          Kwiatkoski testified during his deposition that he heard and then saw "a verbal

17   confrontation" between the Plaintiff and Dorman. (Dkt. 27 - Kwiatkoski Deposition, pp. 15-

18   16). When Kwiatkoski was asked if he saw Plaintiff push Dorman, Kwiatkoski initially

19   answered: "I believe Jarrod pushed Chris - - I honestly don't remember... I don't remember

20   what - - who pushed who to be truthfully honest with you."  (Dkt. 27, p. 20).  When asked

21   if he remembered if somebody got pushed,  Kwiatkoski testified: "It's hard to say.  I

22   remember  - - I remember - - no, I can't say for sure.  I don't want to say for sure because I

23   don't know for sure."  (Dkt. 27, p. 21). Kwiatkoski testified: "I'm pretty sure Chris didn't

24   push Jarrod ... I'm not going to say for sure Jarrod pushed Chris... I just remember Jarrod

25   pushing somebody. ... So I don't believe Jarrod pushed him ... So I'm pretty sure there was

26   no pushing. There might have been, but I'm - - I'm pretty positive there wasn't."  (Dkt. 27,

27   pp. 21-22).

28

1    Kwiatkoski testified that he "immediately jumped up" and went over to where the two

2    men were standing. (Dkt. 27, pp. 15-16).  After 30 seconds to a minute, Kwiatkoski punched

3    Plaintiff.  When asked why, Kwiatkoski testified "my bad decision-making when I get angry.

4    I don't know." (Dkt. 27, p. 18).  He further answered "no" when asked if Plaintiff had said

5    anything to him to upset him. (Dkt. 27, p. 18).  He testified: "I wouldn't say I felt threatened,

6    no.  I just made a stupid decision."  (Dkt. 27, p.19).

7    The Court has considered Kwiatkoski's explanation that fights sometimes occur at a

8    party when there are people present from different high schools.  However, Kwiatkoski could

9    not "say for sure if a fight was going to happen or not," testifying that if a fight is going to

10   happen, he would "rather be the one who gets it over with first..."  (Dkt. 27, pp. 22-24).

11   According to Kwiatkoski, Plaintiff "didn't look like he wanted to leave, so it gave me the

12   impression that maybe he was going to - - you know, resistance was there. I didn't know

13   because Jarrod was telling him to get out." (Dkt. 27, p. 20).  Kwiatkoski testified that Plaintiff

14   "didn't have his fists up or anything like that." (Dkt. 27, p. 22).  Kwiatkoski also testified: "I

15   didn't want a fight to break out so I punched him."  (Dkt. 27, p. 26).

16   The undisputed facts show that Kwiatkoski's punch to Plaintiff's face was unprovoked.

17   The blow was volitional, the event was in Kwiatkoski's control, and no accident or calamity

18   beyond Kwiatkoski's control occurred.  See Meere, 694 P.2d at 187-90 (discussing

19   unprovoked, unprivileged act of striking someone in the face with a fist). The exclusion

20   applies because the insured may not be indemnified against loss resulting from his own willful

21   wrongdoing.  Id., 694 P.2d. at 186.

22   It is unnecessary to consider the Parties' other arguments as Defendant is entitled to

23   summary judgment based on the undisputed facts of record.

24   Accordingly,

25   **IT IS ORDERED** that Defendant's Motion to Withdraw Argument in Summary

26   Judgment Motion (Dkt. 24) is granted.

27   **IT IS FURTHER ORDERED** that Defendant's Motion for Oral Argument (Dkt. 43)

28   is denied.

1    **IT IS FURTHER ORDERED** granting Defendants Motion for Summary Judgment

2  (Dkt. 23) on Plaintiff's breach of contract claim.

3    **IT IS FURTHER ORDERED** denying Plaintiff's Cross Motion for Partial Summary

4  Judgment (Dkt. 25) on the breach of contract claim.

5    DATED this 24th day of September, 2007.

6

7

8    _____
                 Earl H. Carroll
           United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28